UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARK ALLEN SALGADO,

      Plaintiff,

v.              Case No. 21-cv-1450-pp

SERGEANT JOHN DOE,
OFFICER JOHN DOE I,
and OFFICER JOHN DOE II,

      Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) DENYING AS UNNECESSARY PLAINTIFF'S SECOND MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 10), DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTIONS FOR APPOINTMENT OF COUNSEL (DKT. NOS. 13, 15) AND SCREENING COMPLAINT**

  Mark Allen Salgado, who is incarcerated at Waupun Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants injured him by placing him in painfully tight handcuffs during an offsite medical visit. This decision resolves the plaintiff's motions for leave to proceed without prepaying the filing fee, dkt. no. 2, 10, his motions asking the court to appoint counsel to represent him, dkt. nos. 13, 15) and screens his complaint, dkt. no. 1.

**I. Motions for Leave to Proceed without Prepaying the Filing Fee (Dkt. Nos. 2, 10)**

  The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h).

The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On December 28, 2021, the court ordered the plaintiff to pay an initial partial filing fee of $10.50. Dkt. No. 6. The court received that fee on January 21, 2022. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

On February 23, 2022, the court received from the plaintiff a second copy of his motion for leave to proceed without prepaying the filing fee. Dkt. No. 10. Perhaps the plaintiff filed this second copy because it had taken so long for the court to address the first motion that he was concerned the court had not received it. Because the court is granting the plaintiff's first such motion, the court will deny the second motion as unnecessary.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if an incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be

granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter C'nty Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. C'nty of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less

stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The complaint has sued an unknown John Doe Sergeant and two unknown John Doe correctional officers, all of whom he alleges work at Waupun. Dkt. No. 1 at 1. The complaint alleges that on April 21, 2021, he was "sent on a trip" to the University of Wisconsin Hospital in Madison for a scheduled medical visit. Id. He explains that Department of Corrections policy requires persons in its care to be put in restraints, and he says that there was no issue with the restrains on the trip to the hospital. Id. After his medical visit, however, Officer Doe I tightened put the handcuffs on the plaintiff "so tight they felt like vices." Id. The plaintiff told the officer the handcuffs were too tight. Id. He says the officer "tried to loosen them" but ended up tightening them further, which caused the plaintiff "unbearable pain that brought [him] to [his] knee." Id. at 1–2. The plaintiff told Officer Doe I "how much pain [he] was in," but the officer told him "that the trip back to the prison was about only about [*sic*] an hour." Id. at 2. The plaintiff alleges that both John Doe Officers "ma[d]e fun of how [he] was complaining and suffering in agonizing pain instead of helping." Id.

When the plaintiff arrived at the prison, he asked Sergeant John Doe (who, he explains, was the supervisor of the transporting officers) "why he let his officers do that to [him]." Id. Sergeant Doe merely "shrugged his shoulders and walked away." Id. The plaintiff says he later filed a grievance about the

incident, and he says that the nursing staff saw his hand and "it was recorded to be swollen and very red" hand. Id. The plaintiff says that according to his latest diagnosis, he has "damage to the tendons and limited mobility to two fingers on [his] right hand." Id.

The plaintiff seeks compensatory damages for the injuries to his hand. Id. He also asks that the court remove the three defendants from their positions "to protect other inmates from a situation as this in the future." Id.

C. Analysis

The plaintiff's allegations amount to a claim of deliberate indifference, which arises under the Eighth Amendment's prohibition of cruel and unusual punishments. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). An Eighth Amendment claim consists of both objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the objective component, an incarcerated person must show that he "is incarcerated under conditions posing a substantial risk of serious harm." Id. The subjective component of an Eighth Amendment violation requires the plaintiff to demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." Id. A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez, 792 F.3d at 776 (citing Farmer, 511 U.S. at 837).

The plaintiff alleges that Officer Doe I put handcuffs on the plaintiff too tightly. When the plaintiff told the officer that the handcuffs were too tight,

Officer Doe I further tightened them, causing the plaintiff significant pain. Despite the plaintiff telling the officer about the pain, Officers Doe I and Doe II mocked him and laughed at his complaints of pain instead of loosening the handcuffs. The plaintiff says he had to wear the tight handcuffs for the full, one-hour trip from the hospital back to the prison. He says he required medical treatment and suffered injuries to his hand. The plaintiff does not suggest he was a threat to the officers and says he was in restraints under Department of Corrections policy applicable to all incarcerated persons during offsite trips. These allegations satisfy the objective and subjective components of an Eighth Amendment claim. See Ajala v. Tom, 658 F. App'x 805, 807 (7th Cir. 2016) (quoting Stainback v. Dixon, 569 F.3d 767, 772 (7th Cir. 2009) and citing cases recognizing that "'an officer may not knowingly use handcuffs in a way that will inflict unnecessary pain or injury on an individual who presents little or no risk of flight or threat of injury'"). The court will allow the plaintiff to proceed on this claim against Officers John Doe I and II.

The plaintiff alleges that the sergeant was not present when the officers tightened his handcuffs and mocked his pain. He seeks to hold the sergeant responsible because he was the transporting officers' supervisor. Under §1983, however, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Iqbal, 556 U.S. at 676. Instead, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id.; see Day v. Subsecretario del Sistema Penitenciario Federal,

838 F. App'x 192, 193 (7th Cir. 2021) ("Supervisors are responsible for what they do themselves, not for what their subordinates do."). To be liable under §1983, a supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." Sanville v. McCaughtry, 266 F.3d 724, 740 (7th Cir. 2001).

The plaintiff does not indicate whether Sergeant Doe was aware before the trip that the officers would tighten his restraints. He says he told the sergeant about the incident only after he returned to the prison. The plaintiff alleges that he asked the sergeant "why he let his officers do that to [the plaintiff]," and that the sergeant shrugged and walked away. Dkt. No. 1 at 2. Although slim, this allegation suggests the sergeant either might have been aware that the officers had a history of painfully tightening inmate's handcuffs and failed to correct that behavior or that he might have told the officers to do so. If either is true, the sergeant may be held liable for the officers' actions. The court must "'construe the pleading in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor.'" Belongie v. Kluenker, No. 20-cv-1742-PP, 2021 WL 3032862, at *2 (E.D. Wis. July 19, 2021) (quoting Guitron v. Paul, No. 11-C-447, 2011 WL 2649979, at *1 (E.D. Wis. July 6, 2011), aff'd, 675 F.3d 1044 (7th Cir. 2012)). With that standard in mind, the court will allow the plaintiff to proceed on an Eighth Amendment claim against Sergeant Doe.

Because the plaintiff does not know the names of the defendants he is suing, the court will add Waupun Warden Randall Hepp as a defendant for the

limited purpose of helping the plaintiff identify the names of the defendants. See Donald v. Cook Cty. Sheriff's Dept., 95 F.3d 548, 556 (7th Cir. 1996) (noting that courts are charged with assisting *pro se* litigants who state allegations against individuals not necessarily named in the caption of their complaint). Warden Hepp does not have to respond to the complaint. After Warden Hepp's attorney files an appearance in this case, the plaintiff may serve discovery upon Warden Hepp (by mailing it to his attorney at the address in the attorney's notice of appearance) to obtain information that will help him identify the names of the defendants.

For example, the plaintiff may serve interrogatories (written questions) under Fed. R. Civ. P. 33 or document requests under Fed. R. Civ. P. 34. Because the plaintiff has not stated a claim against Warden Hepp, the plaintiff's discovery requests must be limited to information or documents that will help him learn the real names of the defendants he is suing. The plaintiff may not ask Warden Hepp about any other topic, and Warden Hepp is under no obligation to respond to requests about any other topic.

After the plaintiff learns the names of the people that he alleges violated his constitutional rights, he must file a motion to substitute their names for the John Doe placeholders. Once the plaintiff identifies the defendants' names, the court will dismiss Warden Hepp as a defendant. After the defendants have an opportunity to respond to the plaintiff's complaint, the court will set a deadline for discovery. At that point, the plaintiff may use discovery to get the information he believes he needs to prove his claims.

The plaintiff must identify the names of the John Doe defendants **within sixty days of the date that Warden Hepp's attorney files a notice of appearance**. If he does not identify the names of the Doe defendants, or explain to the court why he is unable to do so, by that sixty-day deadline, the court may dismiss his case based on his failure to diligently pursue it. Civil Local Rule 41(c) (E.D. Wis.).

### III. Motions to Appoint Counsel (Dkt. Nos. 13, 15)

Two months after he filed this lawsuit, the plaintiff filed a motion asking the court to recruit counsel to represent him. Dkt. No. 13. Unlike the complaint (which was typed), the motion is handwritten. The motion is very short, but it asserts that the plaintiff has "onset" Alzheimer's disease and that he'd like to receive a lawyer if possible. Id. He says he will send the court a psychological evaluation. Id. The plaintiff says his "confusion is holding [him] back," and that soon he will be taking more tests. Id. The plaintiff also refiled his complaint and attached exhibits of medical forms from the past year and a half. Dkt. No. 9-1. These exhibits include notes from a psychological referral, during which a doctor noted the plaintiff's "history of feigning mental health symptoms for secondary gain" and "a fixation on presenting himself as significantly impaired (regarding his memory)." Id. at 1. Other exhibits show the plaintiff was prescribed Therabands for physical therapy, but the plaintiff wrote on these exhibits that he never received them. Id. at 8–10.

More recently, the plaintiff filed a second motion. Dkt. No. 15. The plaintiff says that the court has the authority to appoint counsel to represent

9
Case 2:21-cv-01450-PP   Filed 09/30/22   Page 9 of 15   Document 16

him and to make the appointment retroactive. Id. He says, "Attorney Jeffrey Jensen attorney out of Milwaukee, WI. has removed himself from my case at this time," and says that he can't represent himself "due to mental disadvantage along with psyc[h]ological issue." Id. He says the Wisconsin Supreme Court has denied him counsel in the state court proceedings. Id.

In a civil case, the court has the discretion to recruit counsel for individuals unable to afford counsel. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866–67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Eagan v. Dempsey, 987 F.3d 667, 682 (7th Cir. 2021) (quoting Pruitt v. Mote, 503 F.3d 647, 654–55 (7th Cir. 2007)). To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Auth., 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." Eagan, 987 F.3d at 682. To do so, the plaintiff must show he contacted at least three lawyers and

provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

The plaintiff has not satisfied the first requirement—he has not demonstrated that he has attempted to find a lawyer to represent him. The plaintiff's first motion does not say whether he has made any effort to obtain counsel on his own. Nor did the plaintiff include letters to or from any attorneys whom he had asked to represent him. His second motion references a lawyer who has *stopped* representing him—presumably in a case he has pending in state court. Before the court will look for a lawyer to represent the plaintiff, he must make an effort to find a lawyer on his own.

Even if the plaintiff had demonstrated that he'd tried to find a lawyer on his own, it is too early in the litigation for the court to determine whether he is able to represent himself. The plaintiff's complaint is clear, concise and easy to understand. It does not indicate that someone other than the plaintiff prepared it. The medical records that the plaintiff provided indicate that he has a history of feigning mental health symptoms and do not reflect an Alzheimer's diagnosis.

At this point, the ball is out of the plaintiff's court. Once Warden Hepp's attorney makes an appearance, the plaintiff will need to ask that attorney for information about the identifies of the three Doe defendants. Once he gets that information, he will need to notify the court of their identities. At that point, the defendants will be required to respond to the plaintiff's allegations. The court

believes that, at this early stage, the plaintiff is capable of asking Warden Hepp's attorney for information about the identities of the three Doe defendants.

The court will deny the plaintiff's motion for recruitment of counsel without prejudice. That means he may refile his motion later if he still believes he needs an attorney's assistance. As the case progresses, the legal and factual issues may become too complex for him, his circumstances may change, or he may find himself unable to obtain the information he believes he needs to prove his claims. If any of those things happen, it may be appropriate for the court to recruit counsel to represent the plaintiff.

## IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES AS UNNECESSARY** the plaintiff's second motion for leave to proceed without prepaying the filing fee. Dkt. No. 10.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motions for appointment of counsel. Dkt. Nos. 13, 15.

The court **ORDERS** that Waupun Correctional Institution Warden Randall Hepp shall be named as a defendant for the limited purpose of helping the plaintiff identify the defendants' names. The clerk's office will update the docket accordingly.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the

complaint and this order to the Wisconsin Department of Justice for service on Warden Randall Hepp.

The court **ORDERS** that Warden Hepp is not required to respond to the complaint; he must respond to discovery requests that the plaintiff serves in an effort to identify the defendants' names. Warden Hepp is not required to respond to discovery requests about any other topic.

The court **ORDERS** the plaintiff to identify the real names of the John Doe defendants within sixty days of Warden Hepp's attorney appearing in the case. If the plaintiff does not identify the real names of the Doe defendants, or explain to the court why he is unable to identify their real names, by the sixty-day deadline, the court may dismiss his case for failure to diligently pursue it. Civil L.R. 41(c).

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$339.50** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to Warden Hepp at Waupun Correctional Institution.

The court **ORDERS** that the parties may not begin discovery (except to identify the Doe defendants) until after the court enters a scheduling order setting deadlines for completing discovery and completing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case for failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court also advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing the case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 30th day of September, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**